# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 11, 2012

## SIDNEY CASON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2006-C-1980     Mark J. Fishburn, Judge**

---

**No. M2012-00364-CCA-R3-PC - Filed April 29, 2013**

---

The Petitioner, Sidney Cason, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his convictions of second degree murder and especially aggravated robbery and resulting effective sentence of forty years in confinement. On appeal, the Petitioner contends that he received the ineffective assistance of trial counsel, which resulted in his guilty pleas being unknowing and involuntary. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, and ROGER A. PAGE, JJ., joined.

Manuel B. Russ, Nashville, Tennessee, for the appellant, Sidney Cason.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Rob McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The record reflects that in July 2006, the Davidson County Grand Jury indicted the Petitioner and three co-defendants for first degree felony murder, especially aggravated robbery, two counts of aggravated robbery, and aggravated kidnapping. The trial court granted the Petitioner's motion to sever his case from that of his co-defendants.

On August 11, 2008, the Petitioner pled guilty to second degree murder and especially

aggravated robbery. At the plea hearing, the State gave the following factual account of the crimes:

> [O]n October 12th of 2005, the defendant, along with Michael Deshay Peoples, Junior, his brother Stephan Cason and Hillary Mohsenzadeh went to rob Mr. Abdullah Musse and the occupants of 72 Hickory Hollow Trace. During the course of that robbery, Mr. Musse was killed. Mr. Cason gave a statement to the police where he implicated himself as a participant in the robbery along with his brother and Mr. Peoples, while he said he was not the shooter, he did implicate himself in the robbery of Mr. Musse. Mr. Musse was killed as a result of this robbery.

Pursuant to the plea agreement, the Petitioner received concurrent sentences of forty years as a Range II, violent offender for the murder conviction and fifteen years as a Range I, violent offender for the especially aggravated robbery conviction.

On September 9, 2008, the Petitioner filed a motion to withdraw his guilty pleas. The trial court denied the motion, and this court affirmed the trial court's ruling. State v. Sidney Terrell Cason, No. M2008-02563-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 281, at *8 (Nashville, Apr. 6, 2010), perm. to appeal denied, (Tenn. 2010). On July 28, 2009, counsel for the Petitioner filed a petition for post-conviction relief, claiming that the Petitioner received the ineffective assistance of counsel at trial, which resulted in his guilty pleas being unknowing and involuntary, due to counsel's failing to communicate and meet with him adequately, failing to advise him fully about the ranges of punishment and possible lesser-included offenses, and failing to advise him fully about the implications of his pleas.

At the evidentiary hearing, trial counsel testified that he became licensed to practice law in 1994 and that eighty percent of his practice involved criminal law. Counsel was appointed to represent the Petitioner, and he had worked on murder cases prior to the Petitioner's case. Counsel acknowledged that the Petitioner gave an audio-recorded statement to the police shortly after his arrest and that he admitted his involvement in the victim's murder. The Petitioner told the police that he participated in the robbery but that he did not shoot the victim. Counsel filed a motion to suppress the statement, but the trial court denied the motion. Counsel did not know how many times he met with the Petitioner, but he met with the Petitioner one or two days before the Petitioner's scheduled trial. Counsel said the Petitioner's defense was going to be that he acted out of duress from the "major person" who convinced him to participate in the crimes. Co-defendant Michael Peoples had gone to trial several months before the Petitioner's scheduled trial, and counsel watched a video recording of Peoples's trial. Thus, counsel knew exactly what was going to happen

at the Petitioner's trial. Peoples also had used a duress defense. The jury convicted Peoples of all charges, and he received a sentence of life for his first degree murder conviction.

Trial counsel testified that the Petitioner had not mentioned duress in his statement to police, that the Petitioner's defense was weak, and that the jury "would have to come back with a nullification type verdict" in order not to convict the Petitioner as charged. Counsel and the Petitioner did not talk about subpoenaing witnesses. If the Petitioner had given counsel some names of witnesses, counsel would have subpoenaed them. At some point, the State made an offer for the Petitioner to plead guilty in exchange for an effective forty-year sentence to be served at 100%. On the morning of trial, the Petitioner told counsel that he wanted to accept the offer. During the Petitioner's plea colloquy with the trial court, the Petitioner never indicated that counsel was unprepared for trial. However, within thirty days of the Petitioner's pleas, the Petitioner sent counsel a handwritten letter asking counsel to file a motion to set aside the guilty pleas. Counsel filed the motion. Regarding his representation of the Petitioner, counsel stated,

> I think he was at one time dissatisfied, we had some discussions about that, I felt he was comfortable going to trial, we had the motion to suppress prior to trial, I think everything was good up until then. We had a good preparation on the Saturday or Sunday before [trial], and that's basically - I felt it was a good relationship at that time, might have been rocky at one time, but I think it was okay.

On cross-examination, trial counsel acknowledged that a few months before trial, the Petitioner filed a pro se motion asking that the trial court remove counsel from his case. Counsel said that he met with the Petitioner, that they discussed the situation, and that "everything was okay." The trial court never conducted a hearing on the motion. Counsel said that the Petitioner's "chief complaint" about counsel's representation was that counsel did not "visit with him enough." However, it was counsel's policy not to visit clients in jail unless he had something to discuss with them. Counsel said that he gave the Petitioner copies of everything he received during discovery and that the Petitioner was "well aware of the facts that the State had." Although counsel did not think the defense had a basis to file a motion to suppress the Petitioner's statement to police, counsel filed the motion anyway at the Petitioner's request. The Petitioner was only sixteen years old at the time of the crimes, and his case originated in juvenile court. The Petitioner had an attorney in juvenile court, and the attorney hired an investigator for the Petitioner's case. When the Petitioner's case was transferred to criminal court, trial counsel was appointed and obtained the previous attorney's file. Counsel never obtained the Petitioner's school records. However, at the hearing on the motion to suppress, counsel questioned whether the Petitioner's IQ was high

enough for him to understand his confession. Counsel did not have the Petitioner's competency evaluated because he never had a reason to think the Petitioner was incompetent. The Petitioner understood the charges against him and the possible ranges of punishment. He also seemed to understand what was happening. During the plea colloquy, the trial court addressed the possibility of a jury convicting the Petitioner of lesser-included offenses.

The Petitioner testified that trial counsel began representing him when his case was transferred to criminal court and that counsel represented him for about three years. However, counsel visited him in jail only two or three times. The Petitioner stated that after Michael Peoples went to trial, counsel said he would "come up with some kind of defense." The Petitioner did not receive discovery materials from counsel until three days before his scheduled trial. Counsel did not discuss the State's evidence or his constitutional rights with him. Counsel also did not explain trial procedures, defenses, or jury selection. The Petitioner thought that by pleading guilty, he was going to receive a twenty-five-year sentence and a fifteen-year sentence and that "the [fifteen] was going to run into the [twenty-five]." The Petitioner said he also thought that he was going to serve the sentences "at like [thirty] percent or something like that." After the plea hearing, the Petitioner talked to some people in jail, realized that he should not have pled guilty, and filed a motion "to take the guilty plea back."

The Petitioner testified that several months before his guilty pleas, he filed motions requesting a new attorney. He also wrote several letters to the Board of Professional Responsibility about counsel's not meeting with him. The Petitioner did not think counsel was prepared for trial because counsel never discussed trial strategy with him. He said that "from the start," counsel wanted him to "cop-out." The Petitioner thought he had a good chance of being convicted of a lesser-included offense at trial, but counsel persuaded him that counsel was "going to work something out" for the Petitioner. The Petitioner acknowledged that he did not know he could be convicted of felony murder even though he did not kill the victim. He said that the weekend before his scheduled trial, counsel met with him for fifteen to twenty minutes and told him that he should persuade the jury that he was "forced to do everything." Counsel did not explain lesser-included offenses or the Petitioner's rights. At the guilty plea hearing, counsel told the Petitioner to "just go along" with the trial court and "[a]gree with it." The Petitioner said that he thought the last grade he completed was eighth grade and that he now wanted a trial.

On cross-examination, the Petitioner acknowledged that he went into the victim's home with a gun. However, he said that he went there to trade the gun for marijuana, that he did not intend to commit a robbery, and that he "got caught up in the midst of it." He admitted to the robbery because the police gave him the impression that they would set his brother free. He said that Michael Peoples forced him to point the gun during the robbery

-4-

and that counsel "would have seen how the whole situation happened" if counsel had looked at the facts. The State asked the Petitioner what defense he had wanted counsel to use at trial, and the Petitioner said, "That's his job to figure out." The Petitioner acknowledged that he was under oath when he answered the trial court's questions at the plea hearing. He also acknowledged that the trial court asked him if he had any complaints about counsel. He said he told the court no because his attorney told him "to just go along with it." He stated, "I was telling the Judge from the start how he was misrepresenting me, never coming to see me, I filed a plenty - a little paperwork, I did my part." The Petitioner acknowledged that the trial court asked him questions about his plea and said that counsel told him "to just go along with it, say yes to everything."

In a written order, the post-conviction court found no merit to the Petitioner's claim that counsel was unprepared for trial. The court noted that trial counsel had access to the investigator's information from juvenile court, the State's discovery , and the video-recording of the co-defendant's trial. The court also noted that during the plea colloquy, it asked the Petitioner if he had an opportunity to discuss the facts of his case with counsel, if counsel explained defenses to the charges, and if the Petitioner had any complaints about counsel's representation. Regarding the Petitioner's claim that counsel failed to communicate with him, the post-conviction court again relied on the plea colloquy in which it explained the charges and potential punishments to the Petitioner, asked him if he understood the charges and punishments, explained his guilty pleas and sentences, and asked if the Petitioner understood them. The post-conviction court noted that the Petitioner never expressed any confusion or doubts about his options or his ranges of punishment. Thus, the court concluded that the Petitioner did not receive the ineffective assistance of counsel or that his guilty pleas were unknowing or involuntary.

## II. Analysis

On appeal, the Petitioner challenges the post-conviction court's determination that he did not receive the ineffective assistance of counsel and that he pled guilty knowingly and voluntarily. The State argues that the issues were previously determined by this court in our opinion regarding the Petitioner's withdrawal of his guilty pleas and that, in any event, the Petitioner is not entitled to relief. We conclude that the post-conviction court properly denied the petition.

To be successful in a claim for post-conviction relief, a petitioner must prove factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting

Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the

right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements, a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

Initially, we will address whether the Petitioner's claims have been previously determined. "A matter previously determined is not a proper subject for post-conviction relief." Forrest v. State, 535 S.W.2d 166, 167 (Tenn. Crim. App. 1976). See also Miller v. State, 54 S.W.3d 743, 747-48 (Tenn. 2001). "A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." Tenn. Code Ann. § 40-30-106(h).

Our review of this court's opinion affirming the trial court's denial of the Petitioner's motion to withdraw his guilty plea reveals that this court stated, "The Defendant contends that his plea was not entered knowingly and voluntarily because he felt he was not properly represented and was unprepared for trial." Although that summary of the Petitioner's issue sounds similar to the claims he raised in his post-conviction petition, the Petitioner did not argue specifically in his motion to withdraw that he received the ineffective assistance of counsel, and the trial court did not address the ineffective assistance of counsel. In addition, this court has held that the voluntariness of a petitioner's guilty plea was so interconnected with his claim of ineffective assistance, that it was not previously determined by a ruling on his motion to withdraw his guilty plea. See Kenneth Barley v. State, No. E2011-01603-CCA-R3-PC, 2013 Tenn. Crim. App. LEXIS 206, at *55 (Knoxville, Mar. 11,

2013). Finally, the record demonstrates that the Petitioner presented evidence, such as his trial attorney's testimony, at the post-conviction evidentiary hearing that he did not present at the hearing on his motion to withdraw his guilty plea. Therefore, we conclude that the issues before us have not been previously determined.

Nevertheless, we conclude that the post-conviction court properly dismissed the petition. The post-conviction court obviously accredited trial counsel's testimony regarding his investigation and preparation of the Petitioner's case. Counsel testified that he had access to the Petitioner's juvenile court file, that he viewed the video-recorded trial of the Petitioner's co-defendant, and that he knew from the recording exactly what to expect at the Petitioner's trial. The post-conviction court also reviewed the guilty plea hearing transcript and concluded that the transcript demonstrated the Petitioner pled guilty knowingly and voluntarily. Our review of the plea hearing shows that the Petitioner informed the trial court that he only completed the eighth grade but that he could read and write. The trial court explained to the Petitioner the charges against him, his potential punishments, and the possible lesser-included offenses. The trial court also informed the Petitioner that he was pleading guilty to second degree murder in exchange for a forty-year sentence and especially aggravated robbery in exchange for fifteen-year sentence. The trial court asked the Petitioner if he had any questions about the charges, the possible punishments, or the plea, and the Petitioner said no. The trial court asked the Petitioner if he had discussed the charges, lesser-included offenses, and plea agreement with his attorney, and the Petitioner answered yes. In sum, our review of the plea colloquy shows that the Petitioner did not just answer yes to the trial court's questions. Instead, he answered yes and no at the appropriate times, including when the trial court asked him if he had "any complaints whatsoever" with trial counsel's representation. We note that the Petitioner was facing convictions for five serious felonies, including first degree murder with a resulting life sentence, but that he chose to plead guilty to second degree murder and especially aggravated robbery in exchange for an effective forty-year sentence. Therefore, we agree with the post-conviction court that the Petitioner did not receive the ineffective assistance of counsel and that he pled guilty knowingly and voluntarily.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE

-8-